## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| vs. | : | |
| | : | |
| GARY SMITH | : | NO.  07-571 |

### MEMORANDUM AND ORDER

**Gene E.K. Pratter, J.**_____**March 26, 2008**

### INTRODUCTION

Gary Smith has been indicted for one count of possession with the intent to distribute cocaine base ("crack") and one count of possessing a firearm in furtherance of a drug trafficking crime.  The substance of the charges against Mr. Smith emanate from law enforcement surveillance of Mr. Smith and others in October 2006 and the seizure of various items from his residence on October 11, 2006 by Philadelphia police officers pursuant to a search warrant issued that same day.

Mr. Smith moves to suppress the fruits of the search on various grounds discussed below. Mr. Smith primarily attacks the efficacy of the probable cause Affidavit pursuant to which the search warrant was issued.  Mr. Smith also argues that the police officers failed to properly honor the so-called "knock and announce" rule when they presented themselves to effectuate service and execution of the search warrant at Mr. Smith's residence.

Following an evidentiary hearing, and after carefully considering the written and oral submissions of counsel for Mr. Smith and for the Government, the Court concludes that the

suppression motion should be denied.

**FACTUAL BACKGROUND**

According to the Affidavit of Probable Cause prepared by Philadelphia police officer Gary Francis,[1] Officer Francis received an anonymous complaint on October 2, 2006 concerning an illegal drug selling operation being conducted in and about the 100 block of East Pleasant Street in Philadelphia's 14th police district.  Reportedly, a "black male known as 'Gary,'" residing in a row home at 136 East Pleasant Street, was the drug operation's ring leader and supplier of crack cocaine to a cadre of street sellers.  Following up on the anonymous tip, Officer Francis and a police colleague conferred with a confidential informant who confirmed the anonymous caller's basic information.  The confidential informant thereafter was dispatched by the officers to the 100 block of East Pleasant Street where Officer Francis's colleague observed the informant effect a $20 controlled buy of crack cocaine from one Charles Wright.  The officers then undertook a criminal history background check on Mr. Wright which produced information regarding his prior narcotics arrest.  The background check also showed Mr. Wright's residence as 156 East Pleasant Street.

Surveillance of activities on the 100 block of East Pleasant Street resumed the next day. That afternoon the police observed a man (later identified as Mr. Smith) arrive by car at the surveillance location, get out of the car, and enter the 136 East Pleasant Street residence using a key to unlock the front door.  About five minutes later, Mr. Smith was seen leaving 136 East Pleasant Street and going into 156 East Pleasant Street.  After a short time, Mr. Smith left 156

---

[1]Officer Francis, a 16-plus year veteran of the Philadelphia police force with many years' experience in narcotics investigations, testified at the suppression hearing.

2

East Pleasant and returned to the 136 property.  Two minutes later Mr. Smith came out of 136 and went back into 156.  According to the Affidavit, early that evening a police officer went with the informant to 156 East Pleasant Street and made a controlled buy of four packets of crack cocaine from Mr. Wright.

A week later, surveillance continued at the location.  The police observed Mr. Smith come out of 136 East Pleasant, go to the 1997 Chevy Monte Carlo he had previously been seen driving and reach under the passenger side floor board, following which Mr. Smith was seen retrieving items from a plastic bag which items he exchanged with an unknown black man.  Mr. Smith then was seen approaching another unknown man to whom Mr. Smith gave the plastic bag.  Mr. Smith then returned to the Monte Carlo and drove away.  Soon thereafter the informant and an officer made a controlled buy of 4 packets of crack cocaine from the second man who had been seen earlier with Mr. Smith.

According to Officer Francis, he ascertained from a check of Philadelphia records that Mr. Smith's Philadelphia Photograph Number ("PPN") is 786615 and included that PPN data in his Affidavit.  Officer Francis also learned that Mr. Smith had a more than 10-year old non-drug related conviction that Officer Francis did <u>not</u> mention one way or the other in the Affidavit.  Likewise, Officer Francis did <u>not</u> report the fruits of his title search for the owner of the Monte Carlo (which search did not disclose Mr. Smith, but rather someone else, as the owner of the car).

Officer Francis's Affidavit recounted that the informant had previously worked successfully with and for the narcotics officers in other investigations.  He also affirmed his and his colleague's own extensive experiences with narcotics investigations and, finally, stated:

> "Based on the information received, the confirmation of the information by surveillance, the officer and informant purchases as well as backround [sic] checks [on Messrs. Wright and Smith], [Officer Francis] <u>believes that Gary Smith is operating a drug operation in the 100 block of E Pleasant and uses 136 and 156 E Pleasant St to manufacture, store and distribute from</u> as well as transport said contraband inside the 1997 Chevy Monte Carlo and respectfully request that a daytime warrant for [136 and 156 East Pleasant Street and the 1997 Chevy Monte Carlo] be approved."  (emphasis added)

The Philadelphia magistrate approved the search warrants requested by the police.

A law enforcement contingent arrived at 136 East Pleasant Street in the late afternoon on October 11, 2006.  Philadelphia police officer Derrick Garner testified that he, with other officers, went to 136 East Pleasant Street, loudly knocked and announced their presence three times over the course of approximately one minute without anyone answering the door.  Officer Garner then proceeded to ram the front door to gain forced access to the premises.  When the police thus entered the house, according to Officer Garner, he saw an elderly woman (later identified as Virginia Smith, Mr. Smith's mother and the legal owner of the 136 East Pleasant Street premises) coming down the interior stairs, accompanied by a young boy.  Officer Garner then went upstairs to check on behalf of the interests of officer safety.  Other officers promptly proceeded to execute the warrant and search the premises.  The officers ultimately found a host of items, a specific list of which is not relevant for the pending motion, other than to state the obvious, namely, that the various seized items are what Mr. Smith wants excluded from the evidence admissible in this case.  Two witnesses on behalf of Mr. Smith were prepared to testify at the suppression hearing to dispute Officer Garner's testimony concerning the police officers'

meaningfully knocking and announcing their presence prior to forcibly entering the house.[2]

The issuance and execution of only the search warrant relating to 136 East Pleasant Street is at issue in the pending motion.

## DISCUSSION

Mr. Smith seeks to suppress the material seized from 136 East Pleasant Street.  He contends that Officer Francis (the affiant for the probable cause application for the search warrant) made recklessly false statements to the magistrate in order to secure the search warrant, including the reference in the probable cause Affidavit to Mr. Wright's criminal background which, Mr. Smith argues, improperly but necessarily cast unfavorable light on Mr. Smith especially when combined with the inclusion of a "PPN" number for Mr. Smith without disclosure that Mr. Smith's prior criminal history was both stale and wholly unrelated to or unlike the subject of the current drug investigation.  Mr. Smith also argues that on its face the probable cause Affidavit lacks probable cause as to criminal activity at the 136 East Pleasant Street premises, rendering the search warrant flawed.  Finally, Mr. Smith claims that the officers

---

[2]Notwithstanding defense counsel's good-faith effort to secure the attendance of the two witnesses for the hearing, the witnesses were not present.  With the consent of the parties, and in view of the Government's argument on the "knock and announce" issue as discussed below, the Court accepted defense counsel's offer of proof that, if called to testify, (1) Mr. Smith's mother, Virginia Smith, would testify that she was the owner of 136 East Pleasant Street, that she was the woman observed in the house at the time the officers entered, and that she did not hear any knocking or announcement by the police before they rammed the front door and forcibly entered the house; and (2) Mr. Smith's neighbor, Ethel Richardson, would testify that she was present in the connected row home at 138 East Pleasant Street at or near the window in an upstairs room at the front of her home at the time of the events in question and that she heard loud banging at 136 East Pleasant but heard no verbal "announcing" of the officers' presence or purpose prior to the forced entry.  Because the parties' legal arguments on the "knock and announce" issue did not turn on any credibility assessment by the Court of the witnesses or require a finding as to what actually occurred, for purposes of resolving this aspect of the motion both counsel and the Court were satisfied to forego live, sworn testimony by the two unexpectedly absent witnesses.

violated the "knock and announce" rule when they served and executed the search warrant.  Mr.

Smith urges the suppression of the fruits of the search at 136 East Pleasant on any of the

foregoing grounds.   The Government disagrees.

1.      Whether the Probable Cause Affidavit Includes Recklessly False Statements and/or
        Whether the Affidavit Lacks Probable Cause as to the 136 East Pleasant Street Location

        As Mr. Smith acknowledges, an affidavit such as Officer Francis's has a

presumption of validity, a presumption that a defendant may try to rebut by showing that an

affiant recklessly made false statements in or omissions from the Affidavit.  Franks v. Delaware,

438 U.S. 154, 171 (1975).  Material omissions can indeed amount to material misstatements,

thus rendering an affidavit as recklessly false.  Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir.

2000).

        Mr. Smith argues that although the Affidavit suggests that Officer Francis

researched the criminal history of Messrs. Smith and Wright, in actual fact Officer Francis did

very little investigatory checking as to Mr. Smith.  Officer Francis did, however, refer in the

Affidavit to Mr. Wright's prior narcotics criminal history.  Officer Francis learned, but did not

disclose to the magistrate,[3] that Mr. Smith's prior criminal history related to a 1995 incident

involving charges of carrying a firearm without a license.  Officer Francis did include in the

Affidavit Mr. Smith's PPN, essentially suggesting that Mr. Smith had some unspecified prior

interaction with the local criminal justice system.  The Officer did not disclose that his research

did not tie Mr. Smith to ownership of either the Chevy Monte Carlo or of any of the East

---

[3]Officer Francis testified that the only information conveyed to the magistrate is that
which is in the Affidavit.  In other words, Officer Francis testified that he did not orally
supplement the written information he provided in the probable cause Affidavit.

Pleasant Street locations observed.  Thus, Mr. Smith describes the Affidavit as deliberately or recklessly misleading because the combination of what was stated and what was withheld (including what Mr. Smith argues should have been a candid description of the Officer's only minimal "background check" on Mr. Smith) served to cast Mr. Smith in the suggested but erroneous light of some kind of history of drug dealing.  This, Mr. Smith contends by reference to United States v. Yusuf, 461 F.3d 374 (3d Cir. 2006), undermines the efficacy of the Affidavit and, as a result, the search warrant.[4]

Mr. Smith claims that the arguably negative "spill-over" of the information about Mr. Wright and the incomplete information about Mr. Smith combine to present a Franks violation.  Even if the Court agreed that these elements were separately or in tandem misleading (which the Court declines to conclude[5]) and/or that Officer Francis deliberately or recklessly

_____

[4]Mr. Smith also cites without discussion United States v. Jacobs, 986 F.2d 1231 (8th Cir. 1993), and United States v. Stanert, 762 F.2d 775 (9th Cir. 1985), amended, 769 F.2d 1410 (9th Cir. 1985).  Neither of these cases are persuasive here.  In Jacobs, the Eighth Circuit Court of Appeals held that the search warrant affidavit, which stated that a drug-sniffing dog had shown interest in the package searched, was invalid where the warrant application failed to disclose that the dog's behavioral "interest" in the package did not amount to an official "alert."  986 F.2d at 1233.  Because the dog had not given a full alert, the dog's handler was not sure that the package contained drugs. Although the handler communicated this uncertainty to the officer applying for the warrant, the officer omitted this information from the application.  Id.  In United States v. Frost, 999 F.2d 737 (3d Cir. 1993), however, the Third Circuit Court of Appeals upheld the validity of a search warrant under similar circumstances.  Id. at 744 (holding that probable cause supported issuance of search warrant for suitcase, despite omission in underlying affidavit concerning drug-sniffing dog's failure to alert on suitcase).  In Stanert, the court held only that the defendant made a sufficient *preliminary* showing under the Franks test (i.e., that inaccuracies or omissions which were material to a finding of probable cause were contained in the search warrant affidavit and that the affidavit purged of those falsities and supplemented by the omissions would not be sufficient to support a finding of probable cause) to entitle the defendant to an evidentiary hearing on his allegations.  762 F.2d at 782.

[5]On the face of the Affidavit, the information expressly and actually set forth appears to have been accurate and not misleading.  The defense argument that the "silence" on other points

engineered a misimpression (which the Court also declines to conclude[6]), by testing the Affidavit

without the offending information but with the omitted information, the Court may then assess

whether a Franks violation has occurred.  In other words, the issue is to evaluate whether the

allegedly misleading statement(s) was or were necessary to a proper finding of probable cause.

United States v. Shields, 458 F.3d 269, 276 (3d Cir. 2006).  See also Yusuf, 461 F.3d at 383-84;

Sherwood v. Mulvihill, 113 F.3d 396, 400 (3d Cir. 1997).  Excising the information about Mr.

Wright and the PPN reference to Mr. Smith, adding specific information about Mr. Smith's non-

drug related criminal history and/or the information that Mr. Smith did not appear to be the title

holder of either of the properties under surveillance or the Monte Carlo, or using some other

arguably more accurate description of Officer Francis's limited effort to find out any information

about Mr. Smith cannot reasonably be seen as having an impact, one way or the other on the

magistrate's decision to issue the search warrant for 136 East Pleasant Street.  As discussed

below, if the Affidavit was reconstituted corrected for the allegedly misleading features

delineated by Mr. Smith by removing the offending information and adding the information Mr.

---

is somehow manipulative is equally unpersuasive; the "silence" is at most interpreted as neither
meaningful nor meaningless and, as a result, of no moment.

   [6]Through conscientious and skilled cross-examination of Officer Francis, defense counsel
endeavored to portray the Officer's background check of Mr. Smith as uncharacteristically or
unprofessionally underwhelming but presented to the magistrate by Officer Francis with
inappropriate and misleading puffery.  However, Officer Francis testified that he checked into
Mr. Smith's background only so much as he then thought was needed for his present purposes
(i.e., to make sure he was investigating the "right" Mr. Smith), and saw no purpose served by
including information extraneous to that purpose or the probable cause evaluation.  The Court
finds that there is no basis on which to find Officer Francis's actions either disingenuous or
reckless or to question his decision to omit neutral or irrelevant information.  See United States
v. Frost, 999 F.2d 737, 743-44 (3d Cir. 1993); United States v. Calisto, 838 F.2d 711, 715 (3d
Cir. 1988).

Smith says should have been included, sufficient probable cause was presented in the Affidavit.

Mr. Smith also argues that the "four corners" of the Affidavit lack presentation of probable cause to support the search warrant for 136 East Pleasant Street.  He points to the recitation by Officer Francis that a hand-to-hand drug transaction was observed at 156 East Pleasant, but there are no similar references to specific illegal activity at Mr. Smith's residence at 136 East Pleasant.  Mr. Smith emphasizes there were no "boilerplate representations" by Officer Francis within the four corners of this warrant that indicated that drug dealers, or drug sellers, use their residences to maintain the fruits of their activities, and there were no allegations to establish that any contraband would be within the 136 East Pleasant Street address.  While the Court may question the supposed comfort made available from "boilerplate," without such routine language this Affidavit contained sufficient information from which the magistrate could discern "a substantial basis for a fair probability that evidence [would] be found" at 136 East Pleasant Street.  United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993).  Officer Francis recounted in his Affidavit the observations by officers of Mr. Smith going into and leaving 136 East Pleasant Street on several occasions and in rapid sequence (including unlocking the front door with the use of a key); he twice recites information that "Gary" (determined to be defendant Gary Smith who a reliable confidential informant confirmed was a drug dealer) "resides at 136 East Pleasant Street;" he reported that Mr. Smith was observed on the 100 block of East Pleasant Street by police giving a plastic bag to an unknown male from whom a controlled buy of crack was then made, allowing the police to retrieve the crack from the bag Mr. Smith had given the unknown male.  Officer Francis concluded his Affidavit:

"Based on the information received, the confirmation of the

information by surveillance, the officer and informant purchases ...<u>your affiant, P/O Francis...believes that Gary Smith is</u> <u>operating a drug operation in the 100 block of E Pleasant and</u> <u>uses 136 and 156 E Pleasant St to manufacture, store and</u> <u>distribute from</u>...and respectfully request that a daytime warrant for the same be approved."  (emphasis added)

By his reference to "boilerplate representations" about drug dealers or sellers using their residences to maintain the fruits of their activities, Mr. Smith tacitly acknowledges that there is a commonly made connection between illicit drug activity and the suspect's residence.  Nonetheless, Mr. Smith argues that a magistrate is not permitted to infer that there is "a fair probability that evidence will be found" in the place to be searched even after reports of the suspected dealer going in and out of the location with drug buys occurring in between that movement, and he maintains that the probable cause affidavit must *actually articulate* the affiant's supposition or presumption that a suspected drug dealer uses his "home base" for some purpose related to his drug business.  Thus, Mr. Smith's position is essentially that the issuing magistrate must shed and eschew use of experience and common sense to make himself no more knowledgeable than the proverbial "blank slate."  This makes no sense to the Court because to enunciate such a stark rule would be tantamount to saying search warrants could be issued by someone less knowledgeable than a "man on the street," or by the functional equivalent of an ATM machine, so long as certain magic words were presented.  Not only does Mr. Smith present no governing case law[7] to support his argument, it necessarily ignores the accumulated direct

---

[7]The Court finds the citation to <u>United States v. Sartin</u>, 262 F.Supp. 2d 1154 (D. Or. 2003) unpersuasive.  In <u>Sartin</u>, the district court concluded that the warrant application lacked "facts from which a judge could find probable cause to justify the issuance of the warrant" where the reasons given for searching the defendant's apartment were premised upon conduct by her former boyfriend, and even then only loosely connected thereto.  <u>See id.</u> at 1157-59.  In particular, the warrant application specified a gun purportedly involved in a pair of shootings that

information that is presented in Officer Francis's Affidavit, including the summation quoted above from which the magistrate had a sufficient considered basis to reasonably and rationally accept Officer Francis's experienced belief that evidence of illegal drug activities likely would be found in Mr. Smith's residence at 136 East Pleasant Street.  See United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002); United States v. Hodge, 246 F.3d 301, 305, 307 (3d Cir. 2001); United States v. Whitner, 219 F.3d 289, 297 (3d Cir. 2000).[8]

           Therefore, the Court finds no structural or procedural defect in the request for or

---

occurred two months prior; the court determined that the warrant application contained no evidence that the defendant's boyfriend had committed the shootings, and, moreover, that nothing in the warrant materials indicated that the gun would be found at the defendant's apartment.  Id. at 1157-58.  The court concluded that "the rights of third parties must prevail over a fishing expedition, particularly when there is little evidence [defendant's boyfriend] had a gun, let alone that he was hiding it somewhere."  Id. at 1158.  The other stated justification for the search of the defendant's apartment was to find proof that the defendant's boyfriend no longer resided at his registered address, which would be a violation of his sex offender registration.  Id. Prior to applying for the search warrant, the police had already arrested the boyfriend for violating the sex offender registration statute, and he had admitted his guilt.  Id.  The court concluded that not only was the search unnecessary in this respect, the warrant application contained insufficient evidence that the boyfriend was living at the defendant's apartment.  Id. Indeed, according to the court, "[v]irtually all information in the application was to the contrary. Id.  In sum, in Sartin, the warrant application was insufficient, incomplete and logically deficient in almost every respect.  As previously discussed, this is not the case here.  The warrant application in the present case is supported by officers' observations of Mr. Smith and information from a confidential informant, and the search of Mr. Smith's residence was directly relevant to the underlying investigation.

     [8]The Government argues in the alternative that even if the probable cause Affidavit here was deficient, the fruits of the search at 136 East Pleasant Street should not be suppressed on the strength of the "good faith" exception to the exclusionary rule enunciated by the Supreme Court in United States v. Leon, 468 U.S. 897 (1984).  Even if the Court had not concluded that this warrant was properly issued, the record here contains no factual or advocated basis on which this Court could "objectively ascertain" that the law enforcement officers who served this search warrant would have or could have "known that the search [of 136 East Pleasant Street] was illegal despite the magistrate's authorization."  468 U.S. at 922 n. 23.  Therefore, the Leon "good faith" exception to the exclusionary rule would be available as a basis on which to deny Mr. Smith's suppression motion.

issuance of the search warrant for 136 East Pleasant Street and turns to Mr. Smith's final argument as to the conduct of the officers in executing the warrant prior to conducting their search of the premises.

      2.      Whether Law Enforcement Officers Violated the "Knock and Announce" Rule and, If So, Is Suppression the Appropriate Remedy?

As explained above, notwithstanding Officer Garner's testimony at the hearing, the Government was satisfied to essentially accept for purposes of the suppression motion Mr. Smith's argument that the officers failed to properly conduct themselves in accordance with the "knock and announce" rule before invoking 18 U.S.C. § 3109 to break down the front door at 136 East Pleasant Street and enter the premises to execute the search warrant.  The Government counters, instead, that even if the police entered the property without first attempting to gain peaceable entry, suppression of the evidence gathered during the ensuing search is not the required remedy.

The Supreme Court has addressed essentially this fact pattern in Hudson v. Michigan, 547 U.S. 586 (2006), and found that "the knock-and-announce rule has never protected ...one's interest in preventing the government from seeing or taking evidence described in a warrant." 547 U.S. at 586.  Thus, a violation of 18 U.S.C. § 3109 does not translate into suppression of the evidence subsequently seized, assuming the validity of the warrant itself. According to the Supreme Court, the interests of an arguably aggrieved homeowner (in this case Mr. Smith's mother) are unrelated to the seizure of evidence to be used at the trial of Mr. Smith here, and suppression of the seized evidence is not required.

**CONCLUSION**

For the foregoing reasons, the evidence seized from 136 East Pleasant Street on October 11, 2006, to wit, 161 grams of crack cocaine, 164 grams of marijuana, a .40 caliber Smith and Wesson firearm loaded with 12 rounds, a digital scale, a plate with cocaine residue, two photograph identification forms with Mr. Smith's picture, mail addressed to Mr. Smith and packaging paraphernalia will not be suppressed from use at trial in this case on the bases argued in the pending defense motion.  An appropriate Order accompanies this Memorandum.

BY THE COURT:

 /s/ Gene E.K. Pratter
GENE E.K. PRATTER,        J.
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **vs.** | : | |
| | : | |
| **GARY SMITH** | : | **NO.  07-571** |

## <u>O R D E R</u>

AND NOW, this 26th day of March, 2008, following an evidentiary hearing and upon

consideration of Defendant Gary Smith's Motion To Suppress Physical Evidence Obtained By

Search Warrant (Docket No. 29) as well as the Government's Response (Docket No. 30), it is

hereby **ORDERED** that the Motion is **DENIED** for the reasons set forth in the accompanying

Memorandum.

BY THE COURT:


  /s/ Gene E.K. Pratter
GENE E.K. PRATTER,        J.
United States District Judge